# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ELIZABETH ANNE CARPENTER,

*Plaintiff,*

vs.

Case No. 2:12-CV-2791-EFM

CAROLYN W. COLVIN,
Commissioner of Social Security
*Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Elizabeth Anne Carpenter ("Plaintiff") seeks review of a final decision by Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for Disability Insurance Benefits under Title II of the Social Security Act. In her pleadings, Plaintiff alleges multiple assignments of error with regard to residual functional capacity and credibility, vocational expert testimony, use of additional evidence, the demands of Plaintiff's past employment, and the weight assigned to an opinion of one of Plaintiff's treating healthcare professionals. Upon review, the Court finds that the Commissioner's decision was supported by substantial evidence contained in the record. As such, the decision of the Commissioner is affirmed.

# I. Factual and Procedural Background

Plaintiff's medical issues date back to April 6, 2009, when she began complaining of severe neck and back pain, allegedly due to repetitive activity associated with her job as a bank customer service associate. Over the course of the next three years, Plaintiff visited multiple doctors and underwent numerous evaluations, including radiological scans, for her alleged impairments. While initially told that she was not a candidate for surgery, Plaintiff did indeed undergo a cervical discectomy and fusion on June 29, 2012.

Allegedly forced to leave the workplace as a result of her impairments, Plaintiff filed for benefits on February 2, 2010, alleging a disability beginning that same day. Her claim was denied initially on April 16, 2010, and upon reconsideration. Plaintiff timely filed a request for an administrative hearing, which took place on July 8, 2011, before Administrative Law Judge Gary J. Suttles ("ALJ Suttles"). Plaintiff appeared and testified from Columbia, Missouri. ALJ Suttles appeared via video from Houston, Texas.

At the time of the hearing, Plaintiff was a fifty-year-old mother of four who resided with her husband and oldest adult child. Plaintiff, who was represented by counsel, testified that she graduated from high school and completed a minimal amount of college. Plaintiff indicated that her neck and nerve issues prevented her from returning to work and affected her activities of daily living, including grocery shopping, basic housework, and socializing.[1] In an effort to minimize her discomfort, Plaintiff underwent palliative care, including home traction, chiropractic services, massage, use of a transcutaneous electrical nerve stimulation ("TENS") unit, and pain medication. She never attended physical therapy, citing a lack of health insurance.

---

[1] Plaintiff also gave testimony concerning her knee and hip issues, as well as headaches, but she did not attribute her inability to return to work to any of these issues.

Plaintiff testified that she could sit for ten to fifteen minutes at a time, lift five pounds, walk half a block, stand for fifteen minutes at a time, and use a keyboard for ten minutes at a time. Plaintiff also stated that she usually required four to five rest periods per day, each lasting thirty to forty-five minutes.

In addition to Plaintiff's testimony, ALJ Suttles also sought the expert testimony of Vocational Expert Byron Pettingill ("VE Pettingill") to determine how, if at all, Plaintiff's impairments and limitations affected her ability to return to the workforce. VE Pettingill described Plaintiff's past relevant work as a customer service representative as semi-skilled, typically performed at either a light or sedentary level. Based on this description, as well as his review of the entire record, ALJ Suttles questioned the VE as to whether a hypothetical individual with certain limitations representative of the Plaintiff's legitimate limitations, including the need for an at-will sit/stand option, would be able to return to Plaintiff's work as a customer service representative. VE Pettingill answered in the affirmative. On cross-examination, Plaintiff's counsel posed additional hypothetical questions that contained limitations that, in the VE's expert opinion, prevented the hypothetical individual from sustaining competitive employment.

On July 27, 2011, ALJ Suttles issued his decision, finding that Plaintiff suffered from a variety of severe impairments, including osteoarthritis, peripheral neuropathy, cervical pain, left knee replacement, headaches, and obesity. Despite these findings, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. More specifically, ALJ Suttles determined that Plaintiff failed to meet either Listing 1.02, which describes major dysfunctions of a joint, or Listing 1.04, which includes all disorders of the spine.

ALJ Suttles concluded that Plaintiff retained the residual functional capacity to perform light work, as that term is defined under Social Security Regulations, with the following limitations and/or exceptions: (1) only occasional lifting of twenty pounds and frequent lifting of ten pounds; (2) sit/stand option; (3) walking for only four hours out of an eight-hour workday; (4) only occasional overhead extension with the neck and no excessive repetitive neck movements; (5) use of a headset with receiver for telephone work; (6) occasional climbing of stairs but no climbing of ladders, ropes, or scaffolds; (7) no running; (8) no squatting; and (9) limited exposure to heights, dangerous machinery, and uneven surfaces. The ALJ therefore concluded that Plaintiff had not been under a disability since February 2, 2010, the alleged onset date, through the date of his decision.

Given this unfavorable result, Plaintiff sought reconsideration of ALJ Suttles' decision from the Appeals Council. In her application, Plaintiff included additional medical evidence relating to the time period between April and September 2012. On October 25, 2012, upon review of this additional evidence and the ALJ's decision, the Appeals Council denied Plaintiff's request for review. As such, the ALJ's July 2011 decision became the final decision of the Commissioner.

On December 27, 2012, Plaintiff filed a Complaint in the United States District Court, District of Kansas seeking reversal of the ALJ's decision and the immediate award of benefits or, in the alternative, a remand to the Commissioner for further consideration. Given Plaintiff's exhaustion of all administrative remedies, her claim is now ripe for review before this Court.

## II.    Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner as to any fact, if

supported by substantial evidence, shall be conclusive."[2]   The court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[3]  "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion."[4]  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[5]

An individual is under a disability only if she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[6]  This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[7]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[8]  The steps are

---

[2] 42 U.S.C. § 405(g).

[3] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[4] *Barkley v. Astrue*, 2010 U.S. Dist. LEXIS 76220, at *3 (D. Kan. Jul. 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[5] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

[6] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[7] *Barkley*, 2010 U.S. Dist. LEXIS 76220 at *3 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

[8] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a).

designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[9]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those severe impairments meets or equals a designated list of impairments.[10] If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments."[11]

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform her past relevant work or whether she can generally perform other work that exists in the national economy, respectively.[12] The claimant bears the burden in steps one through four to prove a disability that prevents performance of her past relevant work.[13] The burden then shifts to the Commissioner at step five to show that, despite her alleged impairments, the claimant could perform other work in the national economy.[14]

---

[9] *Barkley*, 2010 U.S. Dist. LEXIS at *4.

[10] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 U.S. Dist. LEXIS at *4-5 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[11] *Barkley*, 2010 U.S. Dist. LEXIS at *5; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[12] *Barkley*, 2010 U.S. Dist. LEXIS at *5 (citing *Williams*, 844 F.2d at 751).

[13] *Lax*, 489 F.3d at 1084.

[14] *Id.*

### III.  Analysis

Plaintiff challenges the ALJ's decision on the following grounds: (1) failure to consider additional evidence, (2) failure to properly evaluate Plaintiff's residual functional capacity, and (3) failure to adequately assess the demands of Plaintiff's past relevant work.

### A.  Failure to Consider Additional Evidence

Plaintiff makes repeated attempts to draw this Court's attention to evidence submitted after the administrative hearing but before the Appeals Council review.  This evidence contains Plaintiff's medical records from April to September 2012, most notably, Plaintiff's June 29, 2012, cervical discectomy and fusion.  In its October 2012 decision, the Appeals Council noted that this additional information did "not provide a basis for changing the [ALJ's] decision."[15]

In general,

> [t]he case law requires only that the Appeals Council consider properly submitted evidence that is new, material, and temporally relevant.  If . . . the Appeals Council explicitly states that it considered the evidence, there is no error, even if the order denying review includes no further discussion.  The court takes the Appeals Council at its word when it declares that it has considered a matter.[16]

However, this does not mean that the court simply ignores this later evidence; rather,

> the court must consider the qualifying new evidence submitted to the Appeals Council when evaluating the Commissioner's denial of benefits under the substantial evidence standard . . . This is not to dispute that the ALJ's decision is the Commissioner's final decision, but rather to recognize that the Commissioner's 'final decision' includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence.[17]

---

[15] Doc. 4, Attachment 4, at 3.

[16] *Davison v. Astrue*, 2012 U.S. Dist. LEXIS 134285, *12 (D. Kan. Sept. 19, 2012) (citing *Martinez v. Astrue*, 389 Fed. Appx. 866, 868-69 (10th Cir. Aug. 3, 2010)).

[17] *Davison*, 2012 U.S. Dist. LEXIS at *12-13 (internal citations omitted).

The Court must therefore determine whether this qualifying new evidence either upsets the ALJ's determination or provides a basis for changing the ALJ's decision.[18]

Plaintiff now argues that this additional evidence, most especially the fact that she required surgery to correct her neck and back issues, serves to prove the following points: (1) her pain was debilitating to the point that she could not work, and (2) her subjective complaints of pain were credible. What Plaintiff fails to disclose, however, is the fact that this cervical discectomy and fusion seemingly corrected her back and neck issues. By the second day after surgery, Plaintiff reported no numbness or pain in her arms. One month later, on July 31, 2012, Plaintiff's surgeon reported that Plaintiff had good use of her left arm and minimal to no neck pain. As Plaintiff's neck pain was her primary impairment, its subsequent correction does not upset the ALJ's decision, nor is it a basis for changing the ALJ's finding of non-disability. Rather, it simply lends credence to the Commissioner's conclusion that Plaintiff was not, in fact, disabled. As such, Plaintiff's assignment of error with regard to the consideration of new evidence is without merit and is therefore dismissed.

**B. Residual Functional Capacity**

Plaintiff's next four assignments of error, namely her issues concerning credibility, evaluation of opinion evidence, failure to link specific medical evidence to findings, and vocational expert testimony, all stem from the ALJ's assessment of Plaintiff's residual functional capacity. Specifically, Plaintiff alleges that the ALJ's failure to properly evaluate these four components resulted in an improper assessment of Plaintiff's residual functional capacity.

---

[18] *Id*. at *13.

Plaintiff's argument is without merit. As a preliminary matter, some general information regarding residual functional capacity is helpful.

### 1. Generally

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations."[19] A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."[20] The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record.[21] The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."[22] However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."[23]

### 2. Credibility

Plaintiff first alleges that the ALJ failed to properly consider and weigh her credibility, especially in light of Plaintiff's newly submitted evidence. Plaintiff's argument is without merit.

---

[19] *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001).

[20] SSR 96-8p, 1996 SSR LEXIS 5, at *19 (July 2, 1996).

[21] *Id.*

[22] *Id.*

[23] *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

At the administrative hearing, Plaintiff testified that she experienced debilitating neck pain brought on by years of repetitive movement in her job as a customer service representative. When asked to rate her pain level on a scale of one to ten, Plaintiff stated that, even with pain medication, she was "approaching a seven."[24]  Plaintiff claimed that she tried to do housework but had difficulty with any task involving stairs.  She testified that she generally required multiple rest periods throughout the day, ranging from, on a good day, thirty to forty-five minutes at a time, to upwards of ninety minutes at a time on a bad day.  Plaintiff indicated that she could go grocery shopping but required assistance carrying the bags.  Plaintiff further testified that she frequently traveled to see her sister in Kansas City, her most recent trip just one month before the hearing.  Plaintiff noted that the drive was approximately three and a half to four hours.

Recognizing that "some claimants exaggerate symptoms for the purposes of obtaining government benefits,"[25] an ALJ's credibility determinations are generally treated as binding on review.[26]  "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.[27]  The Court cannot displace the ALJ's choice between two fairly conflicting views even though the Court may have justifiably made a different choice.[28]  However, notwithstanding the deference generally given to an ALJ's

---

[24] Doc. 4, Attachment 4, at 40.

[25] *Bolan v. Barnart*, 212 F. Supp. 2d 1248, 1260 (D. Kan. 2002) (citing *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987)).

[26] *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990); *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983).

[27] *Wilson*, 602 F.3d at 1144; *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

[28] *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

credibility determination, "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."[29]

In evaluating a disability claim based on nonexertional symptoms, including pain, the ALJ must first determine whether the objective medical evidence demonstrates that a claimant suffers from an underlying medically determinable physical or mental impairment.[30] If so, the ALJ must consider the relationship between the impairment and the alleged nonexertional limitation.[31] If a loose nexus exists, the ALJ must then consider all the evidence, both objective and subjective, in determining whether a claimant's limitation is disabling.[32] Factors that may be relevant in assessing the claimant's testimony include the levels of medication prescribed and their effectiveness, the extensiveness of the attempts (medical or non-medical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of non-medical testimony with objective medical evidence.[33]

With regards to Plaintiff's credibility, the ALJ concluded,

[a]fter careful consideration of the evidence . . . that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity,

---

[29] *Wilson*, 602 F.3d at 1144 (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1998)).

[30] *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987); *Williams v. Bowen*, 844 F.2d 748, 753 (10th Cir. 1988).

[31] *Luna*, 834 F.2d at 164.

[32] *Id*.

[33] *Thompson*, 987 F.2d at 1489.

persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.[34]

The ALJ cited Plaintiff's lack of regular care and treatment and further noted that any care Plaintiff *did* seek was minimal and conservative in nature. While "[m]inimal or conservative medical treatment may evince a pain that is not disabling,"[35] the ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide."[36] Here, Plaintiff claims that her lack of treatment was due to her limited financial resources. Plaintiff testified, at multiple points throughout the administrative hearing, that she was unable to afford health insurance and that it would be $700 per month to add her to her husband's policy. In his decision, ALJ Suttles dismissed Plaintiff's justification, stating that Plaintiff had "not exhausted all resources available to her in this regard."[37] This Court tends to agree. While the Tenth Circuit has repeatedly held that "the inability to pay *may* justify a claimant's failure to pursue or seek treatment,"[38] Plaintiff makes no mention of seeking lower-cost or free healthcare. Furthermore, in her additional evidence, it is clear that Plaintiff did indeed have neck surgery. Plaintiff offers no explanation as to how she went from being unable to afford care or treatment to being able to afford what was no doubt a costly procedure.

[34] Doc. 4, Attachment 4, at 23.

[35] *Dellinger v. Barnhart*, 298 F. Supp. 2d 1130, 1136 (D. Kan. 2003) (citing *Wiley v. Chater*, 967 F. Supp. 446, 451 (D. Kan. 1997)).

[36] SSR 96-7p, 1996 SSR LEXIS 4, at *22 (July 2, 1996).

[37] Doc. 4, Attachment 4, at 23.

[38] *Williams v. Astrue*, 2011 U.S. Dist. LEXIS 53027, at *17 (D. Kan. May 17, 2011) (emphasis added); *see also Thompson*, 987 F.2d at 1489-90; *Threet v. Barnhart*, 353 F.3d 1185, 1190 n.7 (10th Cir. 2003); SSR 96-7p at *23 (the fact that "[t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services" is a legitimate excuse).

In addition to the inconsistency about Plaintiff's ability to pay, ALJ Suttles cited other inconsistencies relevant to Plaintiff's credibility. For example, while Plaintiff testified that she left her job at the bank "because of her health,"[39] Plaintiff had previously claimed that she was fired because of an alleged wrongdoing and in retaliation for a possible workers' compensation claim. Additionally, the ALJ noted that despite Plaintiff's alleged debilitating pain, there were examples in the record of medical non-compliance. During an October 26, 2009, visit with her chiropractor, David J. Moreland, DC ("Moreland"), Plaintiff indicated that she was not going to use ice, despite Moreland's advice to do so. Several months later, on February 10, 2010, Moreland indicated that Plaintiff "ha[d] been in the office before but never stayed on a treatment plan of consistent physical therapy, chiropractic treatment and traction with a consistent basis. Strongly urge the [patient] to try to stick with a treatment plan."[40] This Court agrees with the ALJ that Plaintiff's failure to follow medical instructions and recommendations detracts from Plaintiff's credibility.

Finally, the ALJ noted that Plaintiff's admitted activities of daily living did not correspond to her level of pain. Plaintiff was able to maintain her personal grooming and hygiene and indicated that she was able to do household chores and perform the responsibilities of being a wife and mother. Plaintiff testified that she could, for the most part, do household chores, except for the laundry, the only reason being that her washing machine was downstairs and she had difficulty with stairs. Plaintiff also noted that she was able to travel in a car nearly four hours to visit her sister in Kansas City just one month before the administrative hearing. Plaintiff did not indicate any difficulty with her neck or back during the drive.

---

[39] Doc. 4, Attachment 4, at 34.

[40] Doc. 4, Attachment 9, at 74.

Based on a review of the record, this Court determines that the ALJ articulated specific reasons for finding Plaintiff not credible, and these reasons are affirmatively linked to evidence in the record. As stated above, the Court will not reweigh the evidence or substitute its own judgment for that of the ALJ.[41] As such, Plaintiff's assignment of error with regard to credibility is without merit and is therefore dismissed.

### 3. Opinion of Nurse Practitioner

Next, Plaintiff argues that the ALJ failed to properly assess Plaintiff's residual functional capacity because he inappropriately discounted the opinion evidence of Plaintiff's treating nurse practitioner Carlene McMillian, FNP ("McMillian"). In his decision, the ALJ noted that as a family nurse practitioner, McMillian was not considered an acceptable medical source under Social Security Regulations. He assigned the opinion "very little weight," as he found McMillian's opinion not supported by the objective medical evidence of record.[42]

As a general rule, "the Commissioner may use evidence from 'other medical sources' such as nurse-practitioners, physician's assistants, naturopaths, chiropractors, audiologists, and therapists, none of which are on the list of 'acceptable medical sources,' to show the severity of [a] plaintiff's impairments and how they affect [her] ability to work."[43] Recognizing that an increasing number of claimants receive their medical care by these types of health care providers, the Commissioner promulgated Social Security Ruling 06-03p which states, in relevant part:

---

[41] *Hackett*, 395 F.3d at 1173.

[42] Doc. 4, Attachment 4, at 24.

[43] *Dixon v. Astrue*, 2011 U.S. Dist. LEXIS 37518, at *10 (D. Kan. Apr. 6, 2011) (citing 20 C.F.R. §§ 404.1513(d), 416.913(d)).

[w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file.[44]

The Ruling further explains that a disability "adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."[45] The ruling also provides a list of factors that an ALJ should consider in his analysis of these "other sources," including: (1) how long the source has known and how frequently the source has seen the individual, (2) how consistent the opinion is with other evidence, (3) the degree to which the source presents relevant evidence to support an opinion, (4) how well the source explains the opinion, (5) whether the source has a specialty or area of expertise related to the individual's impairment(s), and (6) any other factors that tend to support or refute the opinion.[46] Importantly, the Ruling also provides that "[n]ot every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case."[47]

---

[44] SSR 06-03p, 2006 SSR LEXIS 5, at *8 (2006).

[45] SSR 06-03p at *6; *see also Bowman*, 511 F.3d at 1274 (noting that SSR 06-03p requires an ALJ to evaluate medical opinions from providers who are not deemed "acceptable medical sources" and explain the weight given to them).

[46] SSR 06-03p at *11.

[47] *Id*. at *13.

Here, Plaintiff claims that ALJ Suttles erred by failing to specifically discuss what evidence in the record conflicted with McMillian's opinion. In a medical source statement dated June 15, 2011, McMillian opined that Plaintiff was able to: (1) lift and carry five pounds; (2) sit, stand, and walk for fifteen to twenty minutes; and (3) occasionally balance, reach, handle, finger, and feel. McMillian concluded that Plaintiff was limited in her ability to push and pull, could never climb, stoop, kneel, crouch, or crawl, and required rest to cope with her symptoms every fifteen to twenty minutes. After comparing McMillian's opinion to the balance of Plaintiff's record, the ALJ concluded that her opinion was entitled to

> very little weight as it is not supported by the objective medical evidence and it is not consistent with the evidence of record in its entirety. The limitations delineated in the medical source statement provided by Ms. McMillian are inconsistent with the claimant's level of functioning as well as her activities of daily living as reported and testified to herein. The record indicates the claimant's actual level of functioning is greater than that set forth in Ms. McMillian's statement.[48]

As stated above, an ALJ should "generally" explain the weight given to opinions from other sources; however, the Ruling does not provide any set formula for what constitutes a general explanation.[49] Here, while ALJ Suttles sufficiently assigns weight to McMillian's opinion based on his review of the record as a whole, his reasoning is somewhat limited. However, ALJ Suttles does discuss, in some detail, the results of Plaintiff's radiological evaluations and Plaintiff's own description of her activities of daily living, both of which stand in contrast to McMillian's severe restrictions. This Court therefore finds the ALJ's explanation to be sufficient to meet the requirements of Ruling 06-03p. As such, Plaintiff's assignment of error with regard to the opinion of McMillian is without merit and is therefore dismissed.

---

[48] Doc. 4, Attachment 4, at 24-25.

[49] SSR 06-03p at *15-16.

### 4. Findings Linked to Specific Evidence of Record

Plaintiff next argues that the ALJ failed to link his residual functional capacity findings to any specific evidence of record, in direct contravention of Social Security Ruling 96-8p. Instead, Plaintiff argues, ALJ Suttles provides only a general summary of his findings, which is insufficient to satisfy the requirements of the Ruling. This Court disagrees.

In an effort to flesh out the Social Security Administration's policies and procedures regarding residual functional capacity, the Administration set forth Social Security Ruling 96-8p, which provides the basic framework for residual functional capacity assessment. The Ruling requires that an assessment

> include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activity in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.[50]

As discussed above, this Court found no error with regard to either the ALJ's credibility determination or his evaluation of the opinion of McMillian, a non-acceptable medical source. The only issue left for this Court to consider is the ALJ's narrative discussion of his residual functional capacity findings. Plaintiff alleges that "[w]hen the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts

---

[50] *Castillo v. Astrue*, 2011 U.S. Dist. LEXIS 597, at *28 (D. Kan. Jan. 4, 2011) (internal citations omitted).

and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by the substantial evidence."[51]

The point of Plaintiff's assignment of error is unclear. If she is arguing that the ALJ failed to pinpoint, in the evidence of record, his basis for each and every conclusion, Plaintiff's assignment of error is without merit. Courts in the Tenth Circuit have clarified SSR 96-8p to mean that a residual functional capacity assessment "does not require citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation assessed."[52] "What is required is that the discussion describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment."[53] There is no need for the ALJ to "base the limitations in his RFC assessment upon specific statements in medical opinions in the record."[54]

Plaintiff is likewise mistaken if she is arguing that the ALJ failed to *support* his residual functional capacity assessment with record evidence. ALJ Suttles discusses at length the reasons for his findings, basing his assessment on Plaintiff's conservative treatment, lack of credibility, treatment non-compliance, and activities of daily living. The decision also mentions reports of Plaintiff's healthcare providers, including McMillian and Dr. Todd Stewart, MD, as well as the results of some of Plaintiff's radiological scans. As such, Plaintiff's assignment of error alleging

---

[51] Doc. 14, at 34 (quoting *Williams v. Astrue*, 2010 U.S. Dist. LEXIS 114122, at *6 (D. Kan. Oct. 26, 2010) (citing *Southard v. Barnhart*, 72 Fed. Appx. 781, 784-85 (10th Cir. Jul. 28, 2003)).

[52] *Teneyck v. Astrue*, 2012 U.S. Dist. LEXIS 72687, at *24 (citing *Castillo*, 2011 U.S. Dist. LEXIS 597 at *29.

[53] *Id*.

[54] *Teneyck*, 2012 U.S. Dist. LEXIS 72687 at *24.

the ALJ's failure to "link" his residual functional capacity assessment to specific evidence in the record is without merit and is therefore dismissed.

### 5. VE Testimony

Plaintiff sets forth two issues of concern with regard to the VE: (1) the ALJ failed to include all of Plaintiff's medically determinable limitations in his hypothetical questions, and (2) the ALJ failed to inquire as to whether the VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT"). The Court finds both arguments to be without merit.

### a. Incomplete Hypothetical

Plaintiff first argues that the ALJ failed to present the VE with a complete hypothetical question. In support of this argument, Plaintiff cites to the additional medical evidence submitted on administrative appeal as well as the opinion of McMillian.

"Hypothetical questions posed to the vocational expert must reflect with precision a claimant's impairments, *but only to the extent that they are shown by the evidentiary record*."[55] Given this general standard, it is unrealistic to have expected the ALJ to include in his hypothetical question any limitations or restrictions that were discovered only after the ALJ issued his decision. As noted above, the medical records submitted to the Appeals Council contain results of Plaintiff's appointments that occurred from, at the earliest, April 2012, nearly nine months *after* the administrative hearing. It was thus clearly impossible for the ALJ to include these findings in his hypothetical questions to the VE. Plaintiff does not ask this Court to remand this case for another hearing whereby the ALJ could include in his hypothetical questions information contained in these additional medical records. Even if Plaintiff *had* made

---

[55] *Hawkins v. Astrue*, 2011 U.S. Dist. LEXIS 110221, at *14 (D. Kan. Sept. 27, 2011) (citing *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996)) (emphasis added).

this request, any such remand would be irrelevant, given that these records do not offer any additional residual functional capacity limitations and in fact show that Plaintiff's alleged impairments were corrected through surgery.  As such, Plaintiff's assignment of error as to this issue is without merit and is therefore dismissed.

### b.  Conflict in Testimony

As noted by ALJ Suttles' residual functional capacity assessment, Plaintiff requires a workplace accommodation that allows her to sit or stand at will.  VE Pettingill testified that, even with this need, Plaintiff would be able to return to her past relevant work as a customer service representative.  Plaintiff now argues that this conclusion conflicts with information set forth in the DOT, as the DOT does not specifically address a claimant's need for a sit/stand option.  As such, ALJ Suttles was required to resolve this conflict before relying on the VE's testimony in assessing Plaintiff's residual functional capacity.  Instead, Plaintiff argues, the ALJ failed to inquire of the VE whether his testimony was consistent with the DOT, an error that now requires remand.  Based on a review of the record, this Court disagrees.

In his first hypothetical question to the VE, ALJ Suttles asked the VE to assume a hypothetical individual who, among other things, required a "sit/stand option at will."[56]  The VE testified that, even with this limitation, the hypothetical individual would be able to perform Plaintiff's past relevant work as a customer service representative in either the financial or insurance industries.

---

[56] Doc. 4, Attachment 4, at 51.

At the outset, Plaintiff offers no evidence, other than her own conclusion, that an at-will sit/stand option is not within the purview of the DOT. However, giving Plaintiff the benefit of the doubt, the Court acknowledges well established Tenth Circuit precedent which holds that

> before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point.[57]

Failure to elicit such an explanation is grounds for remand.[58] Here, review of the administrative hearing transcript reveals that ALJ Suttles did indeed fail to inquire of the VE as to whether the VE's answers were consistent with the DOT. However, the Court finds any such error to be harmless.

First and foremost, the Court notes that Plaintiff's counsel had ample opportunity to inquire of the VE as to the basis of his conclusions. Counsel failed to do so, despite posing four separate hypothetical questions to the VE, at least one of which contained an at-will sit/stand limitation. Furthermore, in light of the medical evidence of record showing that Plaintiff's alleged impairments were corrected with surgery, any potential error resulting from this oversight is harmless. "An error is deemed harmless when it does not have a 'substantial influence' on the outcome of the case."[59] As such, Plaintiff's assignment of error dealing with a conflict in the VE's testimony is without merit and is therefore dismissed.

---

[57] *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999).

[58] *See Hackett*, 395 F.3d at 1176 (holding that an ALJ's failure to reconcile the VE's testimony with the DOT required remand).

[59] *Trefethen v. Colvin*, 2014 U.S. Dist. LEXIS 9318, at *15 (D. Kan. Jan. 27, 2014) (citing *United States v. Wacker*, 72 F.3d 1453, 1473 (10th Cir. 1995)).

## C.  Mental and Physical Demands of Plaintiff's Past Relevant Work

In her final assignment of error, Plaintiff argues that the ALJ failed to include, in his analysis at step four of the sequential evaluation, the specific mental or physical demands of Plaintiff's past work.  An ALJ's analysis at step four is three-fold and requires the ALJ to make specific findings of fact regarding: "(1) the individual's residual functional capacity, (2) *the physical and mental demands of prior jobs or occupations*, and (3) the ability of the individual to return to the past occupation given his or her residual functional capacity."[60]  Although an ALJ may not delegate his duty under step four, he may "rely on information supplied by the VE" to complete his analysis.[61]  When the ALJ fails to complete the second step "by not making any findings regarding the physical and mental demands of claimant's past work, either as performed or as it is generally performed in the national economy, then the case shall be remanded . . . ."[62]

Here, the VE testified that Plaintiff's past relevant work as a customer service representative was a semi-skilled occupation performed at both the light and sedentary levels.  Transferable skills included the ability to: (1) open new customer accounts, (2) explain and process investments, (3) greet customers, (4) explain various financial services, (5) input information into a computer, (6) complete financial applications, (7) obtain credit reports, and (8) investigate customer concerns.  While ALJ Suttles did not list these skills by name in his

---

[60] *Kilpatrick v. Astrue*, 559 F. Supp. 2d 1177, 1182 (D. Kan. 2008) (citing *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993)) (emphasis added); *see also* SSR 82-62, 1982 SSR LEXIS 27 at *6 (1982).

[61] *Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003) (quoting *Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996)).

[62] *Kilpatrick*, 559 F. Supp. 2d at 1184 (citing *Clardy v. Barnhart*, 2004 U.S. Dist. LEXIS 5708, *6 (D. Kan. Apr. 5, 2004)).

decision, he did make note of the fact that Plaintiff had "numerous transferable skills."[63] The ALJ also cited the VE's testimony classifying Plaintiff's past relevant work. An ALJ can comply with the requirements of step four "if he quotes the VE's testimony with approval in support of his own findings at phases two and three of the step four analysis."[64]

In addition to this expert testimony, the ALJ obtained testimony from Plaintiff about her work activities, which Plaintiff testified included handling "all the new accounts, all the correspondence. Anything to do with customer service and the computers."[65] Plaintiff also indicated that she dealt with a large volume of telephone calls. Plaintiff herself admits that she "testified generally to her job duties . . . ."[66] While failing to mention the specifics of Plaintiff's testimony, ALJ Suttles did note in his decision that "as described by the claimant," Plaintiff performed her past relevant work at a sedentary level of exertion.[67]

While this Court certainly would have appreciated a more direct discussion of the physical and mental requirements of Plaintiff's past relevant work, such an in-depth discussion is not required.[68] Given the ALJ's consideration and discussion of both the VE's and Plaintiff's testimony with regard to Plaintiff's past relevant work, this Court finds that the ALJ sufficiently

---

[63] Doc. 4, Attachment 4, at 25.

[64] *Kilpatrick*, 559 F. Supp. 2d at 1182.

[65] Doc. 4, Attachment 4, at 34.

[66] Doc. 14, at 28.

[67] Doc. 4, Attachment 4, at 25.

[68] *See Dover v. Apfel*, 2000 U.S. App. LEXIS 1679, at *9 (10th Cir. Feb. 7, 2000) (holding that "[a]lthough the ALJ's findings as to the requirements of [the plaintiff's] former job and how they mesh with his impairments are brief, we find that the ALJ adequately considered . . . the physical and mental demands of [the plaintiff's] past work . . . ."); *see also Purcella v. Colvin*, 2013 U.S. Dist. LEXIS 99687, at *26-27 (D. Kan. Jul. 17, 2013) (holding that "[a]lthough the ALJ did not state 'I find' the demands listed, he specifically noted the demands of work as a security guard as presented by the vocational expert and effectively adopted the findings of the expert. The court will require no more.").

satisfied his obligation at step four.  As such, Plaintiff's assignment of error with regard to this issue is without merit and is therefore dismissed.

**IT IS THEREFORE ORDERED** that the judgment of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED**.

Dated this 31st day of March, 2014.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE